[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On October 18, 1999, a trial to the court was heard on this action for specific performance to compel the sale of real property. The suit began on July 8, 1998, naming Ricky Ricard and a tenant on the property as defendants. On May 12, 1999, Ricard died, and, on August 24, 1999, the administrator of his estate was substituted as a defendant. The action against the tenant was resolved earlier.
The court finds the following facts. On June 3, 1998, the plaintiffs, Allen and Melinda Dziavit, entered into a written agreement with Ricard wherein they were to purchase a house and land known as 41 Shuba Lane in Chaplin, Connecticut, for a total price of $144,000. The agreement required the plaintiffs to pay a $1000 initial deposit on that date, which they paid to Attorney John McGrath, as Ricard's counsel, to be held by him in escrow. The contract was contingent upon the plaintiffs selling their residence at 133 South Bear Hill Road, Chaplin, Connecticut, and obligated the plaintiffs to list that home for sale immediately. The plaintiffs complied with this provision and found a buyer for the 133 South Bear Hill Road residence in a timely fashion. The contract was also conditioned on the plaintiffs obtaining a mortgage loan commitment under certain terms. The plaintiffs also met this condition within the time and terms specified in their agreement with Ricard.
The contract also contained contingencies dependent on the outcome of water, insect, and radon tests, and a structural engineer's report. Further, the septic system had to pass inspection, and a certificate of occupancy had to issue.
Certain fixtures and furnishings, including a refrigerator, were to remain on the property and become the property of the plaintiffs. Ricard had to obtain a release of water rights from one neighbor, notify other neighbors that a path across the land was no longer accessible, fix a water leakage problem in the basement, and remediate any problems disclosed by the various tests and inspections recited above or the contract would be voidable. CT Page 13990
Additionally, the contract provided that, if Ricard received a bona fide offer from another purchaser who was willing to pay a $5000 deposit, then the plaintiffs had to submit an additional deposit of $6500 within one week of the new offer and close within ninety days of the offer.
 I
The court finds that the plaintiffs fulfilled all their obligations under the contract preliminary to closing. They paid a second deposit of $6500 in a timely fashion when notified of an offer by another prospective purchaser. The administrator of the estate contends that the plaintiffs failed to satisfy this requirement because the $6500 check drawn by the plaintiffs for that purpose was payable to Attorney McGrath, who no longer represented Ricard, and the checking account upon which it was drawn had insufficient funds to cover the check when written. The court rejects this contention.
Some additional facts are necessary to address this issue. On June 19, 1998, Attorney McGrath notified the plaintiffs' then counsel, Attorney Angela Hawkins Fichter, that he ceased to represent Ricard in the sale of the property. Attorney McGrath forwarded the $1000 deposit funds to Attorney Fichter for her to hold in escrow until closing. Because the contract specified that deposits were payable to Attorney McGrath, the $6500 check, written on June 22, 1998, was also made payable to him. He, in turn, negotiated the check through his client's fund account and forwarded the funds also to Attorney Fichter.
After writing the $6500 deposit check, Melinda Dziavit forgot to transfer sufficient funds from a savings account to the checking account. This oversight was quickly discovered, and within one day, she transferred adequate funds to cover the check. The check was never dishonored and, in fact, was negotiated by Attorney McGrath.
Attorney McGrath's termination as Ricard's counsel was no fault of the plaintiffs. They attempted to comply with the contract terms by paying the deposit to the person designated for that purpose in the contract. Attorney McGrath's change of status necessitated the transfer of the deposited funds to another to hold in escrow. The plaintiffs never sought a refund of the deposits. These funds were then and still are available as security for the eventual sale of the property. CT Page 13991
The circumstance that, when written, the second deposit check amount exceeded the sums present in the account upon which the check was drawn is of no legal moment. Connecticut's Uniform Commercial Code provides, in General Statutes § 42a-3-310
(b)(1), that payment of the check discharges the obligation for which the check was written. Here, Attorney McGrath negotiated the check, received payment of $6500, and deposited the same in his client's fund account. He then transferred the $6500 to Attorney Fichter to hold in escrow.
The plaintiff's sold their former home and received and have around $28,000 proceeds from that sale. These proceeds plus the $7500 deposited in escrow plus the mortgage loan of $115,000, for which they have secured a commitment from Liberty Bank, constitute the financial ability to satisfy the purchase price of $144,000. They accomplished all these goals within the time periods prescribed by the contract. They are ready, willing, and able to purchase the property. Consequently, they are entitled to a judgment of specific performance, Steiner v. Bran ParkAssociates, 216 Conn. 419, 423 (1990); Romaniello v. Pensiero,21 Conn. App. 57, 61 (1990).
 II
The plaintiffs also claim certain offsets based on events which transpired since the making of the contract. The refrigerator was removed in contravention of the agreement.
Based on all the evidence, the court finds that the refrigerator was about four years old at the time of the contract and had a value of approximately $1000.
A bathtub overflowed in a second floor bathroom causing water damage to the ceiling of the room below. Considering all the evidence adduced on this issue, the court concludes that the reasonable cost of repair of this damage is $500.
Ricard, without permission of the plaintiffs, altered the premises by installing hardwood flooring to some portions of the house and in an incomplete fashion. Based on the evidence, the court finds that the reasonable cost to remove this partially installed flooring is $1000.
The plaintiffs also complain that no attempt to repair the CT Page 13992 leaky basement foundation has been made. During one of Allen Dziavit's visits to the house, he observed water accumulating in the basement. The contract expressly provides that the seller must "fix [the] foundation so that water does not leak into the basement." The repair will entail some excavation and sealing of the outside of the foundation at the front of the house. The court finds that the reasonable cost of such repair is $1800.
The court issues the following orders:
If within sixty days from the time notice of the decision of this case is sent by the clerk to the plaintiffs they shall pay to the defendant Estate of Ricky Ricard the sum of $144,000 (less any deposit previously received by the defendant estate), being the unpaid balance of the purchase price due under the agreement, and subject to the offset noted in the final paragraph of this order, but together with an adjustment as provided by the agreement for taxes as of the date of closing in accordance with the customs of the Windham County Bar Association, the defendant Estate of Ricky Ricard shall forthwith convey the real estate to the plaintiffs by a warranty deed free and clear of all encumbrances.
The defendant Estate of Ricky Ricard shall permit the plaintiffs access to the premises for the purpose of inspection of the well water, for termite and insect and radon tests, and for engineering/home inspection as provided by paragraph 10a of the contract, such testing to be performed at the expense of the plaintiffs.
The Estate of Ricky Ricard shall permit plaintiffs to conduct a septic inspection on the premises, and shall pay to pump the septic system and any necessary septic repairs identified by such inspection pursuant to paragraph 10b of the contract.
The Estate of Ricky Ricard shall obtain a certificate of occupancy to the premises to the Town of Chaplin, at its expense, prior to the closing, pursuant to paragraph 10b of the contract.
The Estate of Ricky Ricard shall obtain a release of any water rights from Hill and Andrea Bullard of 42 Shuba Lane that they may have for water coming across the subject property to the Bullards' property, pursuant to paragraph 10e of the contract.
The Estate of Ricky Ricard shall send a written, CT Page 13993 registered/certified letter to Kenneth and Debra Powchak putting them on notice that they can no longer use the path across the subject premises, pursuant to subparagraph 10h of the contract.
The plaintiffs are entitled to a total offset of $4300 against the purchase price.
Sferrazza, J.